UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

REGINA TURNER,

     Plaintiff,

v.                                 Civil Action No. 3:16cv256

RICHMOND PUBLIC SCHOOLS, *et al.*,

     Defendants.

## MEMORANDUM OPINION

     This matter comes before the Court on the Motion to Dismiss pursuant to Federal Rule of

Civil Procedure 12(b)(6)[1] filed by Defendants Richmond Public Schools ("RPS"), Kimberly

Gray, Kristen Larson, Donald Coleman, Jeffrey Bourne, Derik Jones, Glen Sturtevant, and Dana

T. Bedden (collectively, "Defendants").[2] (ECF No. 13.) Plaintiff Regina Turner responded, and

Defendants replied. (ECF Nos. 16, 17.) The Court exercises jurisdiction pursuant to 28 U.S.C.

§ 1331.[3] This matter is ripe for disposition. The Court dispenses with oral argument because

the materials before it adequately present the facts and legal contentions, and argument would

---

    [1] Federal Rule of Civil Procedure 12(b)(6) allows dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

    [2] Defendant Joseph Andriano, M.D., has not filed any responsive pleadings. Turner served him with the Amended Complaint on August 18, 2016, and the Federal Rules of Civil Procedure required him to file his responsive pleadings by September 8, 2016.

    [3] Section 1331 defines federal question jurisdiction as follows: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Turner's Amended Complaint alleges Fourteenth Amendment violations pursuant to 42 U.S.C. § 1983. Section 1983 provides a private right of action for a violation of constitutional rights by persons acting under the color of state law. 42 U.S.C. § 1983. Turner's Amended Complaint also claims violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, ("Title VII"). Title VII prohibits discrimination by covered employers on the basis of race, color, religion, sex, or national origin. *See* 42 U.S.C. §§ 2000e *et seq.*

not aid the decisional process. For the reasons that follow, the Court will grant Defendants' Motion to Dismiss.

### I.  Motion to Dismiss for Failure to State a Claim Standard

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)).  In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952.  This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (omission in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted).  Instead, a plaintiff must assert facts that rise above speculation and conceivability to those that "show" a claim that is "plausible on its face." *Iqbal*, 556 U.S. at 678–79 (citing *Twombly*, 550 U.S. at 570; Fed. R. Civ. P. 8(a)(2)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

2

defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). Therefore, in order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citations omitted).

## II. Procedural and Factual Background

### A.    Summary of Allegations in the Amended Complaint[4]

Turner, an African-American woman, applied for a position as an Instructional Data Specialist with RPS.  On November 25, 2014, she received a letter confirming that RPS offered her the position with a start date of January 19, 2015.[5]  Turner accepted the offer and "began carrying out her duties in that position" on December 3, 2014.[6]  (Am. Compl. ¶ 16.)  Around the middle of December, Turner signed a form acknowledging that she had read "RPS Policy 7.54," which set forth RPS's drug and alcohol policy.  (Am. Compl. ¶ 17.)

On January 7, 2015, as a "condition of her employment and RPS [sic]," Turner submitted a urine sample for drug and alcohol screening at Chippenham Hospital.  (Am. Compl. ¶ 18.) RPS authorized a "'Pre-Placement' substance abuse test . . . identified as a 'Non-DOT' drug

---

[4] For purposes of this motion, the Court assumes the well-pleaded factual allegations in the Amended Complaint to be true and views them in the light most favorable to Turner.  *See Matkari*, 7 F.3d at 1134.

[5] The Amended Complaint does not make clear whether Turner was employed with RPS in a different capacity when she applied for and was offered the new position.  However, at some point, Turner had been previously employed by RPS, and during that tenure had taken two drug screenings, both of which came back negative—in 2000 and 2008.

[6] Turner includes no explanation of why she began working in her new position more than a month before that position was scheduled to begin.  However, her Amended Complaint states an "effective" date of her Instructional Data Specialist position of January 19, 2015.

3

screen and breath alcohol test with a 'Company' chain of custody."[7]  (Am. Compl. ¶ 21.) Twelve days later, on January 19, 2015, Dr. Andriano notified Turner that her drug test returned positive for cocaine.  Turner, "incredulous because she has never ingested cocaine in her entire life," requested another test.  (Am. Compl. ¶¶ 28–29.)  Dr. Andriano denied that request.

Distressed about the results of the January 7, 2015 drug test, Turner spoke with Janice Garland, her supervisor, and D. Timothy Billups, Executive Director of Human Resources. Garland advised Turner to "go to her personal physician and obtain another drug test" and then report to work on January 20, 2015.  Billups informed Turner that Dr. Andriano must resolve "any decision with regard to [Turner's] positive drug test," and that Turner could continue to work until a final decision had been made.  (Am. Compl. ¶ 33.)  On January 20, 2015, Turner submitted to her personal physician a "urine sample for drug testing."  (Am. Compl. ¶ 32.)  The results for this test came back on January 22, 2015, and "showed that Turner all drug screening including cocaine was negative [sic]."  (Am. Compl. ¶ 35.)

On January 21, 2015, Turner spoke again with Dr. Andriano, who informed Turner that she could not submit an entirely new urine sample, but that she could obtain a "split test," in which a different drug testing laboratory would test her original urine sample.  Turner chose to pay $175 for a split test, which "Quest from LabCorp" would perform.  (Am. Compl. ¶ 36.)  The split test came back positive for cocaine on February 11, 2015.  On February 27, 2015, Billups informed Turner by letter that RPS decided to rescind her offer of employment because she had tested positive for cocaine.

---

[7] RPS Policy 7-3.1 does not mention this type of test, and Turner had "no knowledge" of such a test.  (Am. Compl. ¶¶ 24, 26.)  Moreover, "the RPS Board [has not] authorized or published a 'Non-DOT' drug and alcohol testing procedures [sic] with a 'Company' chain of custody[,] which sets forth sample collection procedures, laboratory analysis of sample, and reporting and review of results."  (Am. Compl. ¶ 25.)

Before the rescission could be finalized, Dana Bedden, Superintendent for RPS, had to ratify it.  On an unspecified day, Shonda Harris-Muhammed, a member of the School Board, raised "Turner's issues and concerns" with the Board's three-member Human Resources ("HR") Committee.  (Am. Compl. ¶ 40.)  The HR Committee reviewed "the facts of the case" and "concluded that there were serious questions as to whether RPS Policy 7-3.1 was violated." (Am. Compl. ¶ 41.)  The Committee recommended that the matter "be investigated before a decision was made regarding Billups'[s] recommendation" to rescind Turner's offer of employment.  (*Id.*)  However, "[t]he Board's attorney questioned whether the HR Committee had authority to look into matters of discipline."  (Am. Compl. ¶ 42.)

The Board was scheduled to review Turner's case on March 2, 2015.  Billups scheduled a meeting with Bedden and Garland immediately before the scheduled Board meeting to discuss Turner's case.  Billups denied Turner's request to attend the meeting with Billups, Bedden, and Garland, telling Turner that "Garland would be [Turner's] representative at that meeting."  (Am. Compl. ¶ 44.)  Turner prepared a "time line [sic] of events" for Garland to share with Bedden at the meeting, but Garland otherwise came "[un]prepared to present to Bedden Turner's issues and concerns" regarding the rescission of her employment offer.  (Am. Compl. ¶ 45.)  At the meeting with Billups and Garland, Bedden "did not question or look into why Turner was not given a drug test pursuant to Policy 7-1.3," nor did he investigate the type of drug test administered to Turner, specifically "why [Turner was given] a 'Pre-Placement' substance abuse test . . . identified as a 'Non-DOT' drug screen and breath alcohol test with a 'Company' chain of custody."  (Am. Compl. ¶ 46.)  Bedden simply stated that "he was not going to reverse HR's decision to rescind Turner's employment offer because he was trying to leave RPS and a decision in favor of Turner 'would not look good' for him."  (Am. Compl. ¶ 47.)

At the March 2, 2015 Board Meeting, without advising the Board of the type of drug test Turner was given, Bedden recommended rescission of Turner's employment offer. "Without any discussion," and contrary to the HR Committee's recommendation, "the Board simply rubber-stamped Bedden's recommendation." (Am. Compl. ¶ 49.)

On June 15, 2015, Turner submitted[8] a letter to the Board requesting reconsideration of its decision to rescind her employment offer. In support of her request for reconsideration, Turner stated:

> (1) There are problems with the policy and procedure that were used in Ms. Turner's case including deficits in the chain of custody of the urine sample collected from Ms. Turner and the results reached with regard to that sample; (2) there are serious questions with regard to the uniformity in the treatment of RPS employees who have tested positive for drugs or alcohol which include but are not limited to race and gender disparity; and (3) Ms. Turner was denied due process. [sic]

(Am. Compl. ¶ 51 (quoting June 15, 2015 Letter to RPS Board).)

That same day, the Board notified Turner that it would evaluate her request for reconsideration at its Board meeting later that day "to determine whether there were sufficient facts in her case to justify a reconsideration of its earlier decision." (Compl ¶ 52.) Turner attended the meeting prepared to provide additional information as needed. However, someone made a bomb threat near the end of the meeting and the Board had to evacuate the building, so it did not consider Turner's request for reconsideration. Two days later, the Board contacted Turner and asked her to "provide[, by July 9, 2015,] a two-page letter with any additional information [Turner] would like to share with [the Board]." (Am. Compl. ¶ 55.) Turner submitted "a revised request for reconsideration" on June 26, 2015. For unexplained reasons, "[t]he Board never met in a formal session either in open or executive session to address Turner's request for reconsideration." (Am. Compl. ¶ 57.)

---

[8] An "Employment Advocate" submitted the letter on Turner's behalf.

Turner points to two sources for RPS policies regarding drug and alcohol use and testing: RPS Policy 7-3.1 and RPS Policy 7.54. Turner relied on these policies in asserting her claims, but failed to attach them to her Amended Complaint.[9] Both parties quote from Policy 7-3.1 and do not dispute that it applies to RPS and its drug testing procedures. Neither party, however, attaches the full policy to their pleadings.[10] Thus, the Court has before it the following policy language:

> RPS 7.3-1 contains the language:
>
> This policy and subsequent procedures applies to all applicants and all School Board and Richmond Public schools employees regardless of service, position[,] or appointment status. [(Am. Compl. ¶ 23.)]
>
> All drug and alcohol testing procedures (including, but not limited to, sample collection procedures, laboratory analysis of samples, and reporting in review of test results) shall also be developed in accordance with Procedures for Transportation Workplace Drug Testing Programs, 49 C.F.R. Part 40.[11] [(Am. Compl. ¶ 61; Mem. Supp. Mot. Dismiss 8–9, n.7.)]
> Any employee found to have a detectable trace of . . . any other controlled substance as defined in . . . Title 54.1, Code of Virginia, as amended . . . shall be recommended for termination. [(Am. Compl. ¶ 89.)]
>
> Richmond Public School reserves the right to conduct drug and alcohol tests on employees and job applicants under the circumstances described below and to require employees and applicants to release to the division superintendent, the Director of Human Resources, or their designee(s), and to Medical Review

_____

[9] Turner attached RPS Policy 7-3.1 to an earlier filing.

[10] "[A] court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint [without converting a Rule 12(b)(6) motion into one for summary judgment] so long as the authenticity of these documents is not disputed." *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396–97 (4th Cir. 2006) (citing *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001). The two RPS policies do not qualify as public records, but they are central to Turner's claim and sufficiently referred to in her Amended Complaint. Therefore, the Court will consider these policies to the extent the parties do not dispute their authenticity, *i.e.*, to the extent the parties quote these policies in their pleadings without objection from the other side.

[11] 49 C.F.R. Part 40 governs procedures for transportation workplace drug and alcohol testing programs. *See* 49 C.F.R. §§ 40.1 *et al.*

> Officer the test results performed by any laboratory or health care provider
> performing drug and alcohol testing. [(Mem. Supp. Mot. Dismiss 8–9, n.7.)]

No pleading quotes from RPS Policy 7.54, but Turner summarizes it as: "among other things,

prohibit[ing] the unlawful manufacturing, distribution, dispensing or possession or being under

the influence in the workplace any [sic] narcotic drug, hallucinogenic drug, amphetamine,

barbiturate, marijuana, prohibited under State law or to possess [sic] drug paraphernalia." (Am.

Compl. ¶ 17.)

Turner's Amended Complaint asserts claims against RPS; Joseph Andriano, M.D., who

was "responsible, among other things, for overseeing the testing of RPS employees and

applicants for RPS employment was [sic] regard to drugs and alcohol," (Am. Compl. ¶ 10);

Kimberly Gray, Kristen Larson, Donald Coleman, Jeffrey Bourne, and Derik Jones, all "duly

elected members of the Board [of RPS]," (Am. Compl. ¶ 11); Glen Sturtevant, a "former elected

member of the RPS Board," (Am. Compl. ¶ 11); and, Dana Bedden, "the duly appointed

Superintendent of RPS," (Am. Compl. ¶ 13). Turner sued all individual defendants in both their

personal and their official capacities. However, Turner did not sue Mamie Taylor, Shonda

Harris-Muhammed, or Tichi Pinkney Eppes, who are also "duly elected members of the [RPS]

Board . . . because they have by their statements and actions indicated their support of [Turner]

with regard to the claims set forth herein." (Am. Compl. ¶ 12.)

As relief, Turner seeks injunctive relief, including "[r]einstatement to her former

position," and a name clearing hearing for herself and all RPS employees, as well as monetary

damages in the form of front and back pay, five million dollars in compensatory damages,

$750,000 in punitive damages, pre- and post-judgment interest, and attorneys' fees.

### B.   Procedural History

At the end of June 2015, Turner filed a charge of discrimination with the Equal

Employment Opportunity Commission (the "EEOC").[12]  Turner alleged "race and color

discrimination; sex (gender) discrimination[;] and[,] retaliation against RPS."  (Am. Compl. ¶ 1.)

The EEOC issued a Notice of Right to Sue on or about February 10, 2016.  Turner filed her

Complaint on April 29, 2016, within 90 days of her receipt of the Notice of Right to Sue.

On April 29, 2016, Turner filed her initial Complaint, which contained no exhibits.[13]  All

defendants except for Dr. Andriano waived service,[14] and their responsive pleadings to Turner's

Complaint were due on July 18, 2016.  Defendants timely filed a Motion to Dismiss Turner's

Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), and Turner filed an Amended

Complaint within twenty-one days, pursuant to Federal Rule of Civil Procedure 15(a)(1)(B).[15]

Turner attached no exhibits to her Amended Complaint.  The Court denied the first Motion to

Dismiss as moot and ordered Defendants to file responsive pleadings to the Amended Complaint.

---

[12] Turner did not attach her EEOC Charge to her Complaint, her Amended Complaint, or the document she filed on July 13, 2016, titled "Exhibits to Complaint."  RPS does not argue that the allegations in Turner's Amended Complaint exceed the scope of the claims in her EEOC Charge which, of course, limits this Court's consideration.  *See, e.g., Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 407 (4th Cir. 2013) ("In any subsequent lawsuit alleging unlawful employment practices under Title VII, a federal court may only consider those allegations included in the EEOC charge.").

[13] On July 13, 2016, without explanation or leave of Court, Turner re-filed her Complaint, this time with five exhibits attached.  Turner titled her filing "Exhibits to Complaint (as incorporated herein)."  (ECF No. 8.)

[14] Summons and a copy of the Amended Complaint appear to have been served with the office manager of a doctor's office at which Dr. Andriano practices.  Dr. Andriano's responsive pleadings to the Amended Complaint were due July 11, 2016.

[15] Rule 15 allows a party to "amend its pleading once as a matter of course within . . . 21 days after service of a motion under Rule 12(b) . . . ."  Fed. R. Civ. P. 15(a)(1)(B).

Dr. Andriano never appeared in response to Turner's Complaint, so Turner served him with the Amended Complaint on August 18, 2016.

Turner's Amended Complaint contains three counts:

Count One: "The 'Non-DOT' Test Administered to Turner Denied Her Due Process of Law," (the "Due Process Claim") against all Defendants;

Count Two: "Denial of Name Clearing Hearing," (the "Procedural Due Process Claim") against the Board members; and,

Count Three: "Race and Gender Discrimination," (the "Title VII Claim") against RPS.

The Defendants filed the instant Motion to Dismiss, Turner responded, and Defendants replied.

### III.  Analysis:  Counts I and II, Turner's Due Process Claims

Turner brings both Counts I and II pursuant to 42 U.S.C. § 1983,[16] alleging that RPS's rescission of her offer of employment violated her Due Process rights under the Fourteenth Amendment to the United States Constitution.[17]  Count I, the Due Process Claim, asserts that RPS administered to Turner a "non-DOT" drug test in violation of RPS Policy 7-3.1, which "requires a DOT Policy test 'as part of pre-employment screening for all positions.'" (Am. Compl. ¶ 71.)  Further, Turner's drug test "did not include a proper chain of custody," "did not identify the certifying scientist name," and "was not signed by the certifying scientist." (Am. Compl. ¶¶ 68–70.)  Turner declares that because "[t]he tests administered on Turner's urine

---

[16] Section 1983 provides a private right of action for a violation of constitutional rights by persons acting under the color of state law.  42 U.S.C. § 1983.

[17] The Fourteenth Amendment provides, in part:

No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV.

sample provided fewer safeguards to the integrity and reliability of test results . . . , Turner was denied minimal due process protections with regard to the testing procedures that were used in her case." (Am. Compl. ¶ 72.)  Turner also contends that "Bedden's failure to intervene into Turner's case . . . [and] his decision to ratify Billups'[s] action to withdraw the employment was capricious and arbitrary and denied Turner minimal due process." (Am. Compl. ¶ 73.)  Finally, "[t]he defendant Board members had a duty and obligation to assure that the laboratory testing procedures that were used to analyze Turner's urine sample at a minimum complied with the provisions of [RPS Policy 7-3.1] and DOT Rule 49 CFR Part 40 § 40.97.[18]" (Am. Compl. ¶ 75.)  Turner avers that these procedural failings in administering her pre-employment drug screening denied her due process.

Count II, the Procedural Due Process Claim, asserts that the Board Member Defendants "have deprived [Turner] of her liberty interests by not providing her with a name clearing hearing." (Am. Compl. ¶ 80.)  She states that "the withdrawal of her offer employment [sic] because she allegedly tested positive for cocaine forces her to communicate this reason to prospective employers" in order to comply with the full disclosure requirements of job applications. (Am. Compl. ¶ 79.)  Additionally, Turner avers that RPS has already disclosed the "stigmatizing information" about the reason her job offer was rescinded.  In mid-September 2015, "Tracy Harvey, Senior, and HR associate for RPS" responded to "T.H. Khan Educ. & and [sic] Instructional Services[']" request for "information on Turner." (Am. Compl. ¶¶ 81–83.)  Harvey responded that Turner "'[d]id not successfully complete pre-employment process'" and would be "'[e]ligible for employment consideration on or after 01/08/2018.'" (Am. Compl. ¶ 83 (quoting Harvey).)  Turner contends that she was denied due process because "when a public

---

[18] 49 C.F.R. § 40.97 governs what, when, to whom, and in what manner drug testing laboratories must report the results of a DOT drug test. *See* 49 C.F.R. § 40.97.

employer either fires or refuses to rehire an employee in a manner that sullies the employee's good name and restricts his/her future employment opportunities, this deprives him/her of important liberty interest protected by the Fourteenth Amendment." (Am. Compl. ¶ 78.)

For the reasons that follow, the Court finds that Counts I and II of Turner's Amended Complaint fail to state a claim upon which relief can be granted. The Court will grant the Motion to Dismiss Counts I and II.

### A.    Applicable Law: Due Process Violations

In order to state a viable claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived him or her of a constitutional right or of a right conferred by a law of the United States. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998) (citing 42 U.S.C. § 1983).  To state either a procedural or a substantive due process claim, a plaintiff must first show that he or she had "a constitutionally protected liberty or property interest." *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 172 (4th Cir. 1988) (citing *Bd. of Regents v. Roth*, 408 U.S. 564 (1972)).  Here, Turner does not state sufficient facts to plausibly claim that she held any liberty or property interest at issue in this action.  As such, she cannot establish a violation of her procedural or substantive due process rights.  Because Turner fails to state a claim for a violation of her rights under the Constitution or a federal law, she cannot sustain a claim for a violation under 42 U.S.C. § 1983.[19] *See Dowe*, 145 F .3d at 658.

---

[19] Even if Turner had alleged the deprivation of a protected property or liberty interest, she fails to state a § 1983 claim against the individual board members in their personal capacities. "In order for an individual to be liable under § 1983, it must be 'affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights.'" *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (citing *Vinnedge v. Gibbs,* 550 F.2d 926, 928 (4th Cir.1977).

**B.      Turner Cannot State a Claim for a Due Process Denial because She Fails to Articulate Any Constitutionally Recognized Property or Liberty Interest**

Turner fails to state facts demonstrating that she had any constitutionally recognized property or liberty interest in her offer of employment from RPS or in being administered any specific drug test.  A property interest protected by procedural due process must be "a legitimate claim of entitlement" created not by federal law, but by "existing rules or understandings that stem from an independent source such as state law." *Davis v. George Mason Univ.*, 395 F. Supp. 2d 331, 336 (E.D. Va. 2005) (citing *Roth*, 408 U.S. at 569), *aff'd*, 193 F. App'x 248 (4th Cir. 2006). "[S]ubstantive due process rights are created only by the Constitution." *Regents of Univ. Mich. v. Ewing,* 474 U.S. 214, 229 (1985) (Powell, J. concurring) (citing *Roth*, 408 U.S. at 577).

A liberty interest may be implicated when a plaintiff shows that he or she suffered from a "reputational injury . . . accompanied by a state action that 'distinctly altered or extinguished' his [or her] legal status." *Shirvinski v. U.S. Coast Guard*, 673 F.3d 308, 314–15 (4th Cir. 2012) (citing *Paul v. Davis*, 424 U.S. 693, 711 (1976)); *see id.* at 315 (holding, under the so-called "stigma-plus" standard, that comments about termination of consultant relationship with Coast Guard did not involve liberty interest in part because private employment loss, or impact on future employability, did not constitute constitutional injury); *Tigrett v. Rector and Visitors of Univ. of Va.*, 290 F.3d 620, 629 (4th Cir. 2002) (citing *Knussman v. Maryland*, 272 F.3d 625,

---

Despite Turner's protestation that "all of the defendants were directly and personally involved in the deprivation of Turner's rights," (Pl.'s Resp. 10, ECF No. 16), no facts in her Amended Complaint support this conclusory statement.  Turner's Amended Complaint speaks only about actions the "Board" took, not about actions any individual Board member took.  (*See, e.g.*, Am. Compl. ¶ 49 ("Without any discussion, the Board simply rubber-stamped Bedden's recommendation . . . ."); Am. Compl. ¶ 54 ("A[n unnamed] representative of the Board advised Turner . . . that the matter would not be taken up."); Am. Compl. ¶ 57 ("The Board never met in a formal session either in open or executive session to address Turner's request for reconsideration.").)  Turner's Amended Complaint therefore fails to adequately set forth a § 1983 claim against Gray, Larson, Coleman, Bourne, Jones, or Sturtevant in their personal capacities.  *See Pettis v. Nottoway Cty. Sch. Bd.*, No. 3:12cv864, 2013 WL 3063704, at *6 (E.D. Va. June 17, 2013).

628–29 (4th Cir. 2001)); *Johnson v. Morris*, 903 F.2d 996, 999 (4th Cir. 1990) (ruling that a newspaper report of the reason for prison employee's demotion did not implicate liberty interest because damage from change in employment status did not stem from publication of demotion).

### 1. Turner Fails to Adequately Plead a Property Interest

As someone who had received only a conditional offer of employment, Turner fails to plead adequately a property interest. The Constitution protects property interests, but does not itself create them. A property interest protected by procedural due process must be "a legitimate claim of entitlement" created not by federal law, but by "existing rules or understandings that stem from an independent source such as state law." *Davis*, 395 F. Supp. 2d at 336 (citing *Roth*, 408 U.S. at 569), *aff'd*, 193 F. App'x 248 (4th Cir. 2006). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He [or she] must have more than a unilateral expectation of it. He [or she] must, instead, have a legitimate claim of entitlement to it." *Roth*, 408 U.S. at 577.

"[O]nly where the employee has a legitimate entitlement to continued employment do the requirements of due process attach." *Royster v. Bd. of Trustees of Anderson Cty. Sch. Dist. No. Five*, 774 F.2d 618, 621 (4th Cir. 1985) (citing *Roth*, 408 U.S. at 577; *Beckham v. Harris,* 756 F.2d 1032, 1036 (4th Cir. 1985)). "In the context of employment in public education, . . . a contract which provides for continued employment, and which can be terminated only for good cause" creates a protected property interest. *Id.* at 620–21 (citing *Wooten v. Clifton Forge Sch. Bd.,* 655 F.2d 552, 554 (4th Cir. 1981); *see also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538–39 (1985) (finding that a state statute entitling employees "to retain their positions 'during good behavior and efficient service'" and preventing their dismissal except for

"'misfeasance, malfeasance, or nonfeasance in office'" created a property right in continued

employment (quoting statute)).

However, "absence of such an explicit contractual provision may not always foreclose

the possibility that a [state employee] has a 'property' interest in [continued employment]."

*Perry v. Sindermann*, 408 U.S. 593, 601–02 (1972) (remanding the claims of a state college

professor to determine whether the college's rules and understandings created a *de facto* tenure

program entitling the professor to procedural due process protections). In some circumstances, a

plaintiff "might be able to show from the circumstances of [the case]—and from other relevant

facts—that he has a legitimate claim of entitlement to job tenure." *Id.* at 602. But absent some

form of tenure, employment contract, or reasonable expectation of future employment, no

property right in continued employment exists. *See Roth*, 408 U.S. at 578 ("[T]he terms of

[plaintiff's] appointment secured absolutely no interest in re-employment for the next year . . . .

[n]or, significantly, was there any state statute or University rule or policy that secured his

interest in re-employment or that created any legitimate claim to it."); *McNeill v. Butz*, 480 F.2d

314, 320–21 (4th Cir. 1975) (rejecting plaintiffs' "contention that they were deprived of

'property' in the constitutional sense. Neither had an employment contract. Neither had any

form of tenure. . . . Neither plaintiff presented a scintilla of evidence demonstrating the requisite

mutually explicit understanding with [employer] which might have supported a claim of

entitlement to reemployment.").

Even presuming that she were an employee, Turner identifies no form of tenure or

employment contract to support a claim of entitlement to employment. She points to no state

statute that creates a property right in her employment with RPS, and no agreement from RPS

that she would be terminated only for cause.[20]  Turner only "received a confirmation letter of a position offered her . . . , effective January 19, 2015." (Am. Compl. ¶ 15.)  This offer of employment does not constitute any form of tenure or employment contract.  Without any written contract or state statute granting her continued employment, any property right Turner claims must rest on circumstances showing that she had a legitimate claim of entitlement to tenure.  *See Perry*, 408 U.S. at 602.

While the *Perry* court found that a plaintiff "might be able to show from the circumstances of [the case]—and from other relevant facts—that he has a legitimate claim of entitlement to job tenure," *id.*, Turner fails to allege facts or circumstances that would bring her case within the ambit of *Perry*.  Indeed, Turner's allegations belie any claim of a legitimate entitlement to job tenure.  Turner explains that "undergo[ing] an alcohol and drug screening . . . was a condition of her employment and RPS [sic]." (Am. Compl. ¶ 18.)  Turner also asserts that, "[a]s a new job applicant, Turner . . . was covered under Policy 7-3.1," (Am. Compl. ¶ 23), which requires that "'[a]ny employee found to have a detectable trace of . . . any other controlled substance as defined in . . . Title 54.1, Code of Virginia, as amended . . . shall be recommended for termination,'" (Am. Compl. ¶ 89 (quoting RPS Policy 7-3.1)).  Even viewed in the light most favorable to Turner, these allegations demonstrate that Turner knew her offer of employment was contingent on passing the "alcohol and drug screening which was a condition of her employment."  Because her job offer was conditional, Turner had no reasonable expectation of entitlement to job tenure with RPS at the time it rescinded her employment offer.  *See Roth*, 408 U.S. at 578.

---

[20] "In Virginia, an employment relationship is presumed to be at-will, which means that the employment term extends for an indefinite period and may be terminated by the employer or employee for any reason upon reasonable notice." *Cty. of Giles v. Wines*, 546 S.E.2d 721, 723 (Va. 2001).  Turner offers nothing that overcomes this strong presumption.

In sum, Turner points to no employment contract, guarantee of tenure, or mutually explicit understanding that would support a claim of entitlement to her employment with RPS; Turner presents merely an offer of employment contingent on a negative drug test. The allegations in Turner's Amended Complaint establish, even when viewed favorably to her, only that she had a unilateral expectation of—not a legitimate claim of entitlement to—continued employment with RPS. *See Roth*, 408 U.S. at 577. As such, she states no property interest in her continued employment with RPS.

## 2.   Turner Fails to Adequately Plead a Liberty Interest

Turner also fails to plead sufficient facts to allow the Court to draw a reasonable inference that RPS's actions implicate a liberty interest of Turner's. The Supreme Court of the United States has stated that a liberty interests exists "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him [or her] . . . ." *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971); *see also Roth*, 408 U.S. 564 (holding that the state imposition of a "stigma" or other disability foreclosing ability to take advantage of other employment opportunities might implicate a liberty interest). Regarding reputational harm, however, courts have clarified that "an injury to reputation alone does not deprive an individual of a constitutionally protected liberty interest." *Tigrett*, 290 F.3d at 628 (citing *Siegert v. Gilley*, 500 U.S. 226, 233 (1991)); *accord Shirvinski*, 673 F.3d at 314–15.

Indeed, in 1976, the Supreme Court "explained and clarified . . . earlier rulings, seemingly narrowing the circumstances in which the government's damage to a person's name gives rise to a protected liberty interest." *Doe v. Alger*, 175 F. Supp. 3d 646, 659 (W.D. Va. 2016) (citing *Paul*, 424 U.S. 693). Noting that the Constitution is not "a font of tort law," and that "no constitutional doctrine convert[s] every defamation by a public official into a

17

deprivation of liberty within the meaning of the Due Process Clause," *Paul*, 424 U.S. at 701–02,

the *Paul* court found that actions do not implicate the Due Process Clause without the "alteration

of [a] legal status which, combined with the injury resulting from the defamation, justifie[s] the

invocation of procedural safeguards." *Id.* at 708–09. Courts refer to this standard as "stigma-

plus." *See, e.g.*, *Evans v. Chalmers*, 703 F.3d 636, 654 (4th Cir. 2012) ("[A] plaintiff bringing a

'stigma-plus' claim under *Paul* must allege both a stigmatic statement and a state action that

distinctly altered or extinguished his [or her] legal status." (internal quotation marks omitted)).

    A four-part test governs the application of *Paul*'s stigma-plus standard in this circuit

when a plaintiff asserts a deprivation of liberty arising out of termination from state employment.

Under *Sciolino v. City of Newport News*, the plaintiff must "allege that the charges against him

[or her]: (1) placed a stigma on his [or her] reputation; (2) were made public by the employer;

(3) were made in conjunction with his [or her] termination or demotion; and[,] (4) were false."

*Sciolino*, 480 F.3d 642, 646 (4th Cir. 2007) (citing *Stone*, 855 F.2d at 172 n.5) (holding that a

probationary police officer had the right to a name clearing hearing because his employment

record, potentially available to prospective employers, showed without his input that he was

dismissed for advancing his vehicle's odometer). Turner fails to establish the first, third, and

fourth prongs of the *Sciolino* test, and thus cannot meet *Paul*'s stigma-plus standard for

establishing the deprivation of a constitutionally protected liberty interest.

    Turner bases her claim for deprivation of a constitutionally protected liberty interest on

the withdrawal of her conditional job offer, coupled with RPS's statement that Turner "'[d]id not

successfully complete pre-employment process,' and that [she] was '[e]ligible for employment

consideration on or after 01/08/2018.'" (Am. Compl. ¶ 83.) Turner avers that "an HR associate

for RPS" provided this information in response to a request from a prospective employer

regarding Turner's employment history.[21]  (Am. Compl. ¶ 84.)  At base, a neutral

communication about non-completion of the pre-employment process—which simultaneously

reports a future date for hiring consideration—fails to meet the requirement for stating a claim

for deprivation of a constitutionally protected liberty interest in the public employment context.

Turner stumbles on many of the *Sciolino* steps required to state a claim for deprivation of a

constitutionally protected liberty interest.  The statement by RPS that she challenges includes no

stigmatizing information, RPS did not make the statement in conjunction with Turner's

termination or demotion, and, as alleged, RPS did not say anything false.

---

[21] Turner emphasizes a second statement depriving her of a liberty interest:  that her employment offer was withdrawn because she tested positive for cocaine.  In briefing, Turner and Defendants, as they should, focus their analysis on the statement *actually made* by RPS, which is evaluated above.  *See infra*, Part III.B.2.a–c.

That said, the Court will address at least one aspect of Turner's argument.  Turner reports that "the withdrawal of her offer employment [sic] because she allegedly tested positive for cocaine *forces her* to communicate this reason to prospective employers" in order to comply with the full disclosure requirements of job applications.  (Am. Compl. ¶ 79 (emphasis added).)  Even viewing facts favorably to Turner, her contentions fail to satisfy *Sciolino*'s second prong, requiring publication of defamatory statements, because Turner does not allege that "the charges against [her] . . . were made public *by the employer*."  *See Sciolino*, 480 F.3d at 646 (emphasis added).

First, Turner's Amended Complaint contains no allegation that RPS made public the results of her January 7, 2015 drug test.  Second, Turner cites no basis for allowing this Court to find publication when she, herself, is the publisher.  *Sciolino* does not contemplate allowing a plaintiff to establish publication by communicating stigmatizing information to prospective employers—or even the public at large—*on his or her own*.  To so find would contradict longstanding binding precedent, which this Court declines to do.  *See Bishop v. Wood*, 426 U.S. 341 (1976) (finding no liberty interest implicated when police officer's employment was terminated for "failure to follow certain orders, poor attendance at police training classes, causing low morale, and conduct unsuited to an officer" because those reasons "were [only] communicated orally to the [plaintiff] in private" and were not made public); *Sciolino*, 480 F.3d 642 (finding no liberty interest implicated when probationary police officer's employment was terminated for "deliberately destroying city property" because that reason was not made public by the employer); *Zepp v. Rehrmann*, 79 F.3d 381, 388 (4th Cir. 1996) (finding no liberty interest implicated when the deputy sheriff in charge of a detention center was forced to retire because of suspicions of "foul play" relating to an inmate's death in the detention center's custody because that reason was not made public by the employer).

a.    **Turner Fails to Allege That RPS Made Public any Stigmatizing Information**

By resting on a statement about the non-completion of pre-employment process to undergird a liberty interest deprivation, Turner fails to meet *Sciolino*'s very first prong: a stigmatic effect on her reputation. A neutral statement that an applicant "did not successfully complete [the] pre-employment process" and would be eligible for employment consideration at a later date fails to "imply the existence of serious character defects such as dishonesty or immorality" needed to sustain a claim for deprivation of a liberty interest. *See Zepp*, 79 F.3d at 388 (rejecting deprivation of liberty interest claim where employer publicly stated that plaintiff was forced to retire "due to management problems"); *see also Robertson v. Rogers*, 679 F.2d 1090 (4th Cir. 1982) (rejecting deprivation of liberty interest claim where prospective employers were told that plaintiff was terminated for "incompetence and outside activities" because "[a]llegations of incompetence do not imply the existence of serious character defects such as dishonesty or immorality . . . and are not the sort of accusations that require a hearing."

Even viewing her allegations favorably, Turner simply does not establish the "defamatory statements [that] at least imply the existence of serious character defects such as dishonesty or immorality that might seriously damage the plaintiff's standing and associations in his community or foreclose his [or her] freedom to take advantage of other employment opportunities" required to implicate a constitutionally protected liberty interest. *Zepp,* 79 F.3d at 388 (internal citations, quotation marks, and alterations omitted). This means, of course, that even if RPS made this information available to others, as Turner alleges, no stigma attached, and Turner cannot meet the first prong of *Sciolino*'s test.

**b.     Turner Fails to Allege That RPS Made Any Statements in Conjunction with Her Termination or Demotion**

As to *Sciolino*'s third prong, state action does not implicate the Due Process Clause

unless the action accompanies "alteration of [a] legal status which, combined with the injury

resulting from the defamation, justifie[s] the invocation of procedural safeguards." *Paul*, 424

U.S. at 708–09.  Thus, to implicate the procedural protections of the Due Process Clause, an

employee claiming damage to her name or reputation arising out of termination from state

employment, must "allege that the charges against him [or her] . . . were made in conjunction

with his [or her] termination or demotion." *Sciolino*, 480 F.3d at 646.  While Turner asserts that

RPS made statements made in conjunction with her job status when they "withdr[ew] . . . her

offer employment [sic] because she allegedly tested positive for cocaine," (Am. Compl. ¶ 79),

she does not plausibly allege a change in legal status.

In short, Turner's offer of employment conditioned on passing a drug test never became

actual employment.  Turner lacked employment with RPS as an Instructional Data Specialist

before they made a conditional offer, and she lacked employment with RPS as an Instructional

Data Specialist after she failed to meet their precondition.  Turner pleads no "alteration of [a]

legal status" that would justify invoking the procedural protections of the Due Process Clause.

*See Paul*, 424 U.S. at 708–09.

**c.     Turner Fails to Allege That RPS Made Any False Statements**

The final step in *Sciolino*'s four-part test commands, "[t]here can be no deprivation of

liberty unless the stigmatizing charges at issue are false." *Ridpath v. Bd. of Governors Marshall

Univ.*, 447 F.3d 292, 312 (4th Cir. 2006).  Only allegedly false statements can implicate the

protections of the Due Process Clause. *See, e.g., Ledford v. Delancey*, 612 F.2d 883, 887

(4th Cir. 1980) ("Plaintiff has a right that his personnel file contain no substantially false

information with respect to his work performance or the reasons for his discharge when that information is available to prospective employers.").

Turner vehemently protests the accuracy of the drug test, of course. But her claim for a deprivation of a protected liberty interest rests on the only statement RPS made publicly—that Turner "[d]id not successfully complete the pre-employment process [and would be] [e]ligible for employment consideration on or after 01/08/2018." (Am. Compl. ¶ 83.) Turner does not allege that anything about this statement is false, nor can she. Turner's conclusory assertion that "[p]roviding [this information] also violates RPS'[s] policy and procedures" does not lift her claim to a cognizable level.

Turner, even when viewing her allegations favorably, falters on nearly every aspect of *Sciolino* when putting forth her claim. Turner therefore cannot state a claim under *Paul's* stigma-plus standard for the deprivation of a constitutionally protected liberty interest.

### 3.   Turner Had No Protected Interest in a Specific Drug Test

To the extent Turner contends that she had a protected interest in any particular drug test or drug testing procedure, she also does not prevail.[22] "Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983). No constitutional

---

[22] Without citation, and in clear contradiction of well-established law, Turner asserts that "[w]hether or not Turner has a protected property interest is immaterial to this case." (Pl.'s Resp. 3.) She then states that her "claim is that she was administered a drug test that its protocol did not require nor did it have a chain of custody showing that the urine sample Turner submitted was the urine sample that was tested and returned, ergo, the results of the test lacked reliability [sic]." (*Id.*) Turner goes on to make lengthy and irrelevant arguments regarding the "chain of custody deficits" that plagued the January 7, 2015 drug test. (*See id.* 3–6.)

entitlement exists to "'the right to demand needless formality.'" *Id.* (quoting *Shango v. Jurich,*

681 F.2d 1091, 1101 (7th Cir. 1982)).

> Constitutionalizing every state procedural right would stand any due process analysis on its head. Instead of identifying the substantive interest at stake and then ascertaining what process is due to the individual before he can be deprived of that interest, the process is viewed as a substantive end in itself. The purpose of a procedural safeguard, however, is the protection of a substantive interest to which the individual has a legitimate claim of entitlement.

*Shango*, 681 F.2d at 1101.

As discussed above, Turner identifies no deprivation of a substantive, constitutionally-

protected interest. She cannot create such an interest by arguing that "the process [of a DOT

drug test] is . . . a substantive end in itself." *See Shango*, 681 F.2d at 1101. Any procedures to

which Turner was entitled were designed to "protect a substantive interest to which [Turner]

ha[d] a legitimate claim of entitlement." *See Olim*, 461 U.S. at 250. Because Turner pleads no

substantive interest, Turner cannot maintain a claim for denial of her due process rights based on

allegedly improper procedures.[23]

---

[23] Turner contends that "[t]his is also a case where the doctrine of equitable estoppel should be applied, which if applied should prevent and deny [sic] the defendants from challenging Turner's claim to a name clearing hearing." (Pl.'s Resp. 8.) The Court disagrees.

For equitable estoppel to apply, Turner must show: "(1) a representation, (2) reliance, (3) change of position, and[,] (4) detriment." *Zoroastrian Ctr. & Darb-E-Mehr of Metro. Wash., D.C. v. Rustam Guiv Found. of N.Y.*, 822 F.3d 739, 753 (4th Cir. 2016) (citing *Princess Anne Hills Civic League, Inc. v. Susan Constant Real Estate Trust,* 413 S.E.2d 599 (1992)). Turner alleges reliance on Defendants' representation that "the drug test that she was required to take as a condition of her employment would be accurate and fair in that the urine sample that she submitted would be tested and that the results of that test would be based on her urine sample." (Pl.'s Resp. 8.) Turner avers that she "can establish that she relied on this representation when she submitted her urine sample and, in so doing, she changed her position while because [sic] she did not have to submit to the test but only did so as a condition of her employment." (*Id.*)

Even assuming that the drug test Turner took was not "accurate and fair," Turner has not alleged the reliance, change of position, or detriment necessary to support the application of equitable estoppel. Before Turner took the drug test, she had an offer of employment conditioned on taking and passing a drug and alcohol test. Turner alleges that she did not know "of a 'Non-DOT' test with a 'Company' Chain of Custody [and thus] did not authorize, consent[,] or agree to have a urine sample tested under such a procedure." (Am. Compl. ¶ 26.)

23

Turner's failure to plead adequately a protected property or liberty interest of which RPS deprived her is fatal to her procedural and substantive due process claims. The Court will dismiss Counts I and II, the due process claims.

## IV.  Count III, Turner's Title VII Claim

Two statements make up the entirety of Turner's allegations that Defendants violated Title VII. Turner first alleges that "[t]here have been instances where white, male RPS employees tested positive for drugs, yet, [sic] they were not terminated and were allowed to continue with their jobs without any reduction in pay or benefits." (Am. Compl. ¶ 90.) Next, Turner states that she "was similarly situated to these white males except that she was an African-American female, which creates a prima facie case that she was the victim of disparate treatment because of her race and gender." (Am. Compl. ¶ 92.) These bare assertions, lacking specific factual allegations, fail to state a claim for discrimination under Title VII.

### A.  Applicable Law:  Title VII Disparate Treatment

Title VII makes it "an unlawful employment practice" for any employer to "discharge any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). When asserting a claim of employment discrimination under Title VII, a plaintiff may prove his or her claim through direct or circumstantial evidence. *Desert Palace, Inc. v. Costa,* 539 U.S. 90, 99–100 (2003); *see Love–Lane v. Martin,* 355 F.3d 766, 786 (4th Cir. 2004). When, as here, the case does not involve direct evidence of discrimination, the plaintiff must rely on the burden-shifting scheme established in *McDonnell Douglas Corp. v.*

---

But she alleges nowhere in her Amended Complaint that she would not have taken the drug test had she known that she would be administered such a test. Furthermore, Turner took the test because her offer of employment was conditioned on taking and passing a drug and alcohol test. Any change in position or detriment Turner suffered flowed from the test results, not from any representation to her that she would be given a specific type of drug test. Moreover, had Turner refused to take the test, her employment offer would have been revoked.

*Green,* 411 U.S. 792 (1973).   Under the *McDonnell Douglas* framework, the plaintiff must first demonstrate a prima facie case of his or her claim.  *Id.* at 802.

To establish a prima facie case of disparate treatment, a plaintiff must show that:  (1) he or she is a member of a protected class; (2) he or she suffered from an adverse employment action; (3) at the time the employer took the adverse employment action he or she was performing at a level that met his employer's legitimate expectations; and, (4) he or she was treated differently than similarly-situated employees outside the protected class.  *Hill v. Lockheed Martin Logistics Mgmt.,* 354 F.3d 277, 285 (4th Cir. 2004); *Brockman v. Snow,* 217 F. App'x 201, 206 (4th Cir. 2007); *Scott v. Health Net Fed. Servs., LLC,* No. 1:10cv930, 2011 WL 3489612, at *6 (E.D. Va. Aug. 9, 2011).  Although a Title VII plaintiff need not plead facts that constitute a prima facie case, *see Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–15 (2002), a plaintiff still bears the burden of alleging facts "sufficient to state all the elements of her claim." *Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 346 (4th Cir. 2006) (internal quotation marks omitted) *overruled in non-relevant part by Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264 (4th Cir. 2015)

> Consequently, when a plaintiff's complaint sets forth facts in support of his [or her] claim for relief and tracks the language of the applicable cause of action, the legal conclusions "are not talismanic" because "it is the alleged facts supporting those words, construed liberally, which are the proper focus at the motion to dismiss stage."

*Id.* (quoting *Bass,* 324 F.3d at 765).

### B.   Turner Fails to Allege that She was Treated Differently than Similarly-Situated Employees Outside Her Protected Class

Turner cannot proceed with her Title VII claim because, at the very least, she fails to adequately plead the fourth aspect of a prima facie case:  that she was treated differently than similarly-situated employees outside her protected class.  When, as here, a plaintiff claims a

violation of Title VII based "completely upon a comparison to an employee from a non-protected class,[24] . . . the validity of [the plaintiff's] prima facie case depends upon whether that comparator is indeed similarly situated." *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010). Moreover, such a plaintiff must

> show that [he or she is] similar in all relevant respects to their comparator. Such a showing would include evidence that the employees dealt with the same supervisor, were subject to the same standards and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

*Id.* (internal citations, quotation marks, and alterations omitted). Turner fails to plead facts that show such similarities between herself and any comparators.[25]

First, Turner compares herself to "white, male RPS *employees*." (Am. Compl. ¶ 90 (emphasis added).) Turner, as repeatedly noted, had merely been *offered* employment with RPS. Although she asserts that she "began carrying out her duties" on December 3, 2015, (Am. Compl. ¶ 16), Turner's position with RPS did not begin until January 19, 2015. Also, her offer of employment was contingent on taking an "alcohol and drug screening" and not having "a detectable trace of . . . any other controlled substance" as defined by Virginia law. (Am. Compl. ¶¶ 17, 18, 89.) RPS rescinded her employment offer "effective February 27, 2015[,] because she allegedly 'tested positive for cocaine'" based on the January 7, 2015 test. (Am. Compl. ¶ 38.) As only a *prospective* employee, albeit one with a conditional job offer, Turner cannot establish

---

[24] Turner makes no allegations of disparate treatment other than her declaration that "[t]here have been instances where white, male RPS employees tested positive for drugs, yet, [sic] they were not terminated and were allowed to continue with their jobs without any reduction in pay or benefits." (Am. Compl. ¶ 90.) As such, Turner's Title VII claim relies completely on a comparison to employees from a non-protected class.

[25] Turner concedes this failure in her Response to Defendants' Motion to Dismiss: "It is true that Turner has not identified similarly situated employees . . . ." (Pl.'s Resp. 12.)

that she is "similar in all relevant respects to [her] comparator" group of white male *employees*. *See Haywood*, 387 F. App'x at 359.

Second, Turner includes no facts indicating that she and her comparators "dealt with the same supervisor, were subject to the same standards," or even performed the same function for RPS. *See id.* Turner's claim that her inability to "at this moment identify by name[,] title[,] or position, similarly situated employees outside of her protected class who received more favorable treatment is by no means fatal to her claims because that is the purpose of pretrial discovery" misstates the law governing Title VII claims of disparate treatment that rely on similarly-situated comparators to provide evidence of discrimination. Turner, as plaintiff, bears the burden of alleging facts "sufficient to state all the elements of her claim." *Jordan*, 458 F.3d at 346. Turner's bare allegations contain no facts plausibly alleging that she was similarly situated to her proposed comparators.[26]

Finally, Turner fails to plead facts indicating that she and her comparators lacked "such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *See Haywood*, 387 F. App'x at 359. Her allegation that "[t]here have been instances where white, male RPS employees tested positive for drugs, yet, [sic] they were not terminated and were allowed to continue with their jobs without any reduction in pay or benefits," includes no information about the circumstances under which these "white, male RPS employees tested positive for drugs." (Am. Compl. ¶ 90.) Turner adds no

---

[26] Of course, Turner's conclusory statement that she "was similarly situated to these white males except that she was an African-American female," (Am. Compl. ¶ 92), fails to satisfy Turner's burden of pleading facts to support her claim. This legal conclusion, which "tracks the language" of Title VII is "'not talismanic' because 'it is the alleged facts supporting those words, construed liberally, which are the proper focus at the motion to dismiss stage." *Jordan*, 458 F.3d at 346 (quoting *Bass*, 324 F.3d at 765). Turner pleads no *facts* to support her legal conclusion that she was similarly situated to her comparator group of white, male RPS employees.

information regarding potential mitigating circumstances, such as the kind of drug for which these employees tested positive, how long these employees had worked for RPS, or whether these employees subsequently sought treatment. Turner incorrectly claims that, although she "has not identified similarly situated employees," she "should be given the opportunity to fully develop her case through discovery." (Pl.'s Resp. 12.) Even at this early stage of the proceedings, Turner must "allege facts sufficient to state all the elements of her claim." *See Bass*, 324 F.3d at 765 (citations omitted).

Taking all the facts in her Amended Complaint as true, viewing them in the light most favorable to Turner, and disregarding Turner's conclusory statements that, "because they are no more than conclusions, are not entitled to the assumption of truth," Turner cannot state a claim for a violation of Title VII. *See Ashcroft*, 556 U.S. at 679. Turner bases her allegation of a Title VII violation on the claim that "[t]here have been instances where white, male RPS employees tested positive for drugs, yet, [sic] they were not terminated and were allowed to continue with their jobs without any reduction in pay or benefits." (Am. Compl. ¶ 90.) However, Turner fails to plead facts showing that she was "similar in all relevant respects" to her proposed comparators. *Haywood*, 387 F. App'x at 359. The Court will dismiss Count III, Turner's Title VII claim.

28

### V.  Conclusion

For the foregoing reasons, the Court will grant the Defendants' Motion to Dismiss.  (ECF No. 13.)  The Court will dismiss the Amended Complaint.[27]  An appropriate Order shall issue.

_____
/s/
M. Hannah Lauck
United States District Judge

Date: 3/28/2017
Richmond, Virginia

---

[27] Although Dr. Andriano filed no responsive pleadings, he, too, will be dismissed. Turner fails to identify a protected property or liberty interest, so she establishes no due process violation.  She also does not allege a prima facie case of race or gender discrimination, so she establishes no Title VII violation.  As such, all claims against any defendant, including Dr. Andriano, cannot be sustained.